The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Thank you. Good afternoon. We'll call 4-23-0662 Guns Save Life v. Rami Quaul et al. Counsel for the appellant, please state your name for the record. Clark Hildebrand for Point of Appellant, Guns Save Life. Good afternoon. My name is Jane Eleanor Notes for the Defendant Appellee, the Director of the Illinois State Police. Thank you, Mr. Hildebrand. You may proceed. Thank you, Your Honor. May it please the Court, Clark Hildebrand for Point of Appellant, Guns Save Life. The Floyd Act prohibits law-abiding Illinois residents from possessing all firearms anywhere in the state of Illinois. To avoid becoming a criminal, such citizens must submit an application and pay the state for the privilege of exercising their fundamental right to keep and bear arms even in the home, where the right to possess firearms is most acute. The state admits the Floyd Act implicates the Second Amendment's plaintext, which is step one of Bruin. That triggers the state's burden to establish a historical tradition of comparable firearm regulation. The state cannot carry this burden. Illinois' law would have been an outlier in 1791 and at any other time in our nation's history. I welcome the Court's questions, and if they're not, I'll proceed first to the state's argument that Bruin somehow allows this shall-issue possession law to somehow bypass Bruin's two-step approach. Mr. Hildebrand, before you begin, just a point of clarification. Do you agree with the state that the Floyd Act is a shall-issue licensing regime? The Floyd Act is a shall-issue possession licensing law. So, yes, I accept your honor. It is not, however, a shall-issue carry law. Illinois is one of only two states that has a law that sweeps so broadly that it applies to require a license simply to possess a firearm in one's home. Illinois, of course, is a separate licensing system that applies to concealed carry in public and bans open carry of firearms. The clarification that I was looking for was just simply as to whether it was a shall-issue versus a may-issue licensing regime. So, yes, your honor, this is a shall-issue regime. We want to be clear it's a shall-issue possession licensing regime. It's not like, yeah, and so for footnote 9 of Bruin is where the state points to to say that somehow we can bypass the two-step approach that Bruin's holding requires. Bruin simply set aside for another day the question of whether a shall-issue concealed carry licensing law would be constitutional. It did not apply one way or another, and that was not essential to the court's holding. It's thus obitur dictum and is not binding anyway, and cases this court could look to on that issue would be People v. Whiteheart from the Illinois Supreme Court last year or Harms v. Sprague from this court in 1983, in that opinion, was affirmed by the Illinois Supreme Court the following year. The petitioners in Bruin expressly declined to challenge the constitutionality of shall-issue carry laws, as Justice Kavanaugh's concurrence notes, for example, but even assuming arguendo that footnote 9 is binding, which we don't accept, the footnote does not apply to shall-issue possession licensing laws. At least for carry licensing laws, the state could point to surety laws or fray laws that apply out for public carry, but those sorts of laws did not reach into the home to ban the possession of firearms being possessed in the home there, and so even if footnote 9 were to somehow resolve that issue for shall-issue carry laws, it wouldn't apply there. If I understand correctly, your argument, it's that you have to get to step two of Bruin no matter what. There is no skipping step two, such as what the Fourth Circuit did in Maryland shall-issue. Yes, your honor, that's correct. You can't skip step one. Step one, simply as in Rahimi, it looks at whether or not the firearm regulation implicates the plain text of the Second Amendment right to keep and bear arms. Possessing a firearm here, even in the home, is squarely within the plain text of the Second Amendment. That's all the first step in Bruin's test requires, so we have to get to the second test of Bruin, and that's exactly how the Supreme Court approached it in Rahimi. Just because the law dealt with domestic violence abusers, that didn't allow the law to somehow bypass the two-step approach. You had to get to the second step and see whether or not they were historical comparators, and here there are not any historical comparators from 1791 or even from a later time period that are comparable to a law that puts a precondition on exercising the Second Amendment right at all of exercising the right to possess a firearm in the home. The laws that the state cites simply aren't comparable. It focuses on, for example, loyalty oath laws or laws that disarmed Catholics, but as the Supreme Court noted in Rahimi, by the time of the Second Amendment's ratification in 1791, the Second Amendment and early state constitutions made clear that you can't disarm political opponents or religious minorities. These sort of laws are not well established in our nation's history and are no basis for upholding the Floyd Act. After that, the state gets into laws that more post-state the generation that ratified the Second Amendment. We get into surety laws, for example, but surety laws only applied to those who were demonstrated threats of causing harm to others out in public. They did not apply as a broad prophylactic measure to every citizen to require them to affirmatively go out and prove to the government that they were not a felon or mentally ill or anything like that. Other than that, the state points to laws such as laws enacted by southern states in the 1850s, 1860s, even a post-reconstruction law enacted by Florida. And these laws, again, as Rahimi and Bruin make clear, we can't look to laws passed by Confederates that, as for example the Florida law, was only applied to disarm racial minorities in Florida. And even those laws do not reach as broadly as the Floyd Act does, which applies to every firearm possessed anywhere in the state of Illinois. The Florida law, for example, only applied to repeating rifles. But again, that's a law from 1893. It well, well post-dates 1791, which is the relevant period of time. But even if this court thought 1868 were the relevant time period, those sort of post-reconstruction racially-based laws are no support for upholding the Floyd Act. Mr. Hildebrand, I'd like to ask you a hypothetical, and I promise I won't monopolize questioning here. I just want to get this out while you have time. I want you to assume a licensing law like Illinois' Floyd Act, and I'm going to simplify it drastically so that it, we can hone in on the particular criteria here and then the tests that you would employ. But the, this hypothetical law is like the Illinois Floyd Act. It requires individuals in order to acquire or possess firearms to have a license. They have to apply for the license, and the application carries with it a $10 application fee. And it is, it consists solely of a certification that the individual is not a convicted felon. They certify that, and then their $10 application fee, and then within 30 days, they will receive, they shall be issued the license. Now, under the U.S. Supreme Court cases here, just taking the cases that you've identified, and I think you say Bruin is the, sets forth the framework. Take us through the analysis of that hypothetical law. Of course, your honor, I'll try to address the hypothetical as best I understand it here. So, we would approach the law first by, it's a firearm regulation. We approach step one at Bruin, and it sounds like the law applies to possessing a firearm that is squarely within the text of the would have to present laws that it says are historical comparators. I think you have to look at laws at the time of the Second Amendment's ratification in 1791, and immediately right there, to show that it's comparable to that. I don't think that a law that required every Illinois citizen to certify to the government that he or she is not a felon before that individual can possess a firearm would be constitutional. I don't think they're historical comparators to that, just as you wouldn't require, for example, someone to obtain a license from the government to pray with their family in the home or to post an unpopular opinion on Twitter or X or whatever it's called these days. There's no historical tradition of doing so. So, that law would be unconstitutional. Yes, your honor. I think such a law would be unconstitutional. And again, how do you square that then with what Heller says, when it says that nothing in Heller should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons? What was Heller looking at then? I think what Heller was referring to, I don't think we should read too much into dictum from Heller, because even with statements like that, when we get to Rahimi, you still have to go through that two-step process for individuals subject to domestic violence restraining orders, for example, or the Seventh Circuit when it was approached the issue of prohibitions on felons possessing firearms in Atkinson, which is a case from last year. So, I think what the Supreme Court was looking at are laws that prohibit and criminalize felons possessing firearms. Those impose criminal punishments and make it a crime for a felon to possess a firearm. We see those laws. Illinois has its own separate law that prohibits felons from possessing firearms. The federal government does as well. And so, those sorts of laws create criminal prohibitions that apply just to felons. Those are individuals who have already been convicted of a felony. This law, in contrast, applies to all Illinois law-abiding residents. As in the Illinois Supreme Court's decisions in Burns and in Aguilar, there is no element that limits it to just applying to felons. And it sounds like for the hypothetical law that you described, there's nothing that limits that only felons have to go out and obtain such a license. So, it might be a different situation if it's a law applied only to felons. But as you described it, the law applies generally to the law-abiding public. And I think it beggars belief to think that the Floyd Act is what is going to stop a felon who's in intent on possessing a firearm in violation of Illinois's separate prohibition on possessing firearms, that the Floyd Act is somehow going to be what stops them. Forty-eight other states, again, the federal government has a prohibition on felons possessing firearms. I believe pretty much all other states have their own laws prohibiting felons possessing firearms. But forty-eight of the other fifty states, of the other forty-nine states, don't have a law like the Floyd Act that completely requires all law-abiding citizens to go out and affirmatively prove to the government that the individual is not a felon or mentally ill or something like that. It simply is not necessary. Of course, those sort of policy weighing arguments are not what we look at under the Bruin test. But when you're looking at historical comparators, the Floyd Act simply has no historical comparator. If you're looking at things like surety laws, the U.S. Supreme Court made clear that those sort of laws are similar to the prohibition on those with domestic violence restraining orders. They only apply to those who have been found by a court to be a felon, to be a domestic violence offender. And the law that you described in the Floyd Act itself, they apply generally to everyone in the public. And in other areas, this just simply would not be allowed, and it's spatially unconstitutional to have such a law. And I think I know the answer to this, but if the Fourth Circuit of Maryland were to consider the law that I hypothesize here, it would seem they would take it as a first step only analysis and without need to get to the second step in terms of the historical traditions. And they would uphold that law and that you would disagree with that analysis. Yes, sir. I would disagree with the Fourth Circuit majority there. I think Judge Richardson's dissent had it better in that case. And other courts, such as I mentioned earlier, the Seventh Circuit's opinion in Atkinson, which is addressing a law dealing with felons, so that even despite the dicta there, you still have to get and apply the holding, which is that you need this two-step test. And it may be that the state can prevail on step two by showing historical comparators, similar to how the federal government prevailed in Rahimi, by showing historical comparators for those subject to domestic violence restraining orders. But you can't simply avoid the test, which is the holding of Bruin altogether. And other courts that have similarly approached that, I think we cited in an Eighth Circuit decision dealing with the Minnesota law called Worth. And other courts, I think, are correct with Judge Richardson's dissent that you just can't have this end run around simply because it's a shall-issue licensing system, especially here, where it's a shall-issue possession licensing system, which completely eliminates any ability of just law-abiding citizens to possess a firearm, even under the scenario where you'd have a, and I think as the Supreme Court noted in, I think, footnote one, maybe footnote two, of this decision in Bruin, even for those within 43 states that have shall-issue carry licensing systems, the majority of those states, I think at the time it was 25, now states like South Carolina, Florida, Louisiana have joined them. The majority of states allow some form of permitless carry, whether that's open carry or concealed carry. You don't have to have a license at all to carry in the majority of states. And in 48 of the 50 states, law-abiding citizens don't need any sort of license to possess a firearm in the home, which, as Heller noted, is where the right to keep and bear arms is most acute. Bill and Brandon, could I ask a question? Of course, Your Honor. The reference that was made to Heller by Justice Harris related, did it not, to the historical tradition of precluding felons and people who were mentally ill from possessing firearms? Oh, I think there, similar to Rahimi, even where you have dicta front, and that's how the Supreme Court approached it, is where you have dicta in decisions like Heller or in Bruin about prohibitions and felons or domestic abuters possessing firearms, you still have to go through that two-step process. I think that's why- Right, but my point is that was already understood by the founders when the Second Amendment was  Well, they already understood that there are certain classes of people who are, who are and have been historically prohibited from possessing firearms, correct? Well, here you are. This isn't applying to certain classes. This is applying to all law-abiding Illinois citizens. Felons are already prohibited from possessing firearms. That's the point I'm getting to, is that they're not affected by this application of the FOIA Act, correct? Correct, Your Honor. Felons are already prohibited. This law really is going to impact law-abiding Illinois citizens and particularly possessing firearms in the home because Illinois already prohibits. As soon as they take that firearm outside the home, if they want to carry it out in public, Illinois has a separate licensing system that applies there. And then, of course, they can't open carry it. So if you're going to apply how the Illinois Supreme Court approached defacial tests and burns, we're looking to where the law has an actual impact. And I think you're right, Your Honor, that the actual impact is on those law-abiding Illinois citizens, people who aren't felons or anything like that, just possessing firearms in the home. And it's squarely protected by the Second Amendment, and there's no historical tradition of doing so. And under a Second Amendment analysis, the only people that are relevant are the people that are affected by the restriction, correct? Yes, Your Honor, that's correct. And in this case, under the FOIA Act, it's the law-abiding citizens that are affected by the application of the Act. It doesn't necessarily affect felons because felons are already precluded from possessing firearms and have historically been so. Yes, Your Honor, that's completely right there. And then I pointed out as well that the Maryland law wasn't even as broad as this here. It applies only once for purchasing a handgun. It doesn't apply to all firearms. It doesn't apply to simply possessing previously obtained firearms in the home. It's not a repeated process you have to go through to pay the state. There are all sorts of ways that the law there wasn't as broad as what we have here. Illinois is an outlier even today, but definitely historically at the relevant 1791 time period. Can you point to, or has the state pointed to, any founding era firearm regulation that's not otherwise unconstitutional by today's standards that limits conduct in a way similar to or for similar reasons as the FOIA Act? Namely, it prohibits everyone from acquiring or possessing a firearm until they prove they are qualified. The state has not done so, Your Honor. And as we previously explained, I think the closest they try to come so would be, and just continue briefly, is going to be the loyalty oath laws, which again, as the Supreme Court made clear in Rahimi, those are no basis for appointing the FOIA Act. And they would be unconstitutional under the U.S. Constitution, the Second Amendment. With that, I'll reserve my time for rebuttal. Okay. I have a question. What about felons that are subject to potential penalties for possessing a firearm? Aren't they affected by criminal potential exposure for being a felon and then being caught in the possession of a firearm? And wouldn't they have an interest here because they could face issues with their liberty? Thus, they're impacted. I assume the question is still directed at me. There's a separate Illinois law, and that's 720 Ill. Compstat 5-24-1.1, that already prohibits felons from possessing firearms. They're already committing a crime. They're already prohibited by the state of Illinois from doing so, in addition to the federal prohibition on them doing that. So the only people it's really making a difference for would be those law-abiding Illinois citizens who'd otherwise have the ability to possess a firearm in the home. I guess my point is, without the Foyd Card Act, there wouldn't be this other offense so that felons' rights are affected because it puts them in a class of individual that could be prosecuted because of the Foyd Card Act and their actions in relation to that. I think you're right. This other statute would exist regardless of the Foyd Act. It prohibits simply possessing a firearm. It doesn't matter. Even if you take out the Foyd Act part, they cannot possess a firearm, period, in Illinois. Similar for federal law. It doesn't hinge on whether or not they have a Foyd Card. They are prohibited, period, from possessing a firearm in the state of Illinois. There are systems in place to report their convictions. Illinois also has systems which were not considered constitutional, but Illinois has systems here, like firearm restraining order laws and things like that, that if a felon has a firearm, there are ways to report that and to prosecute them. They're already prohibited from possessing firearms. So the group that really makes a difference for is those law-abiding Illinois citizens. And you can't broadly target the entire Illinois population simply because you also want to impose some additional prohibition that already exists on felons. With that, unless there are further questions, Your Honor, I'll save the rest for rebuttal. Thank you, counsel. Thank you for your explanation. Any further questions? Ms. Notes? Thank you. Thank you, Your Honor. Good afternoon. Again, Jane Eleanor Notes on behalf of the Defendant Appellee, the Director of the Illinois State Police. This court should affirm the Circuit Court's judgment rejecting Plaintiff's Second Amendment challenge to the FOID Act for three reasons. First, Plaintiff brought a facial challenge, which means that Plaintiff must show that there is no set of circumstances in which the FOID Act is constitutional. Plaintiff cannot do this because there clearly are constitutional applications of the Act. Do we not start with first determining whether the conduct that's sought to be affected falls within the text of the Second Amendment? Certainly, Your Honor. If Your Honor wants to get at this through step one of the Bruin test, Your Honor. Okay, then let me ask this question. Are you saying then we just completely avoid the two-step process of Bruin? No, not at all, Your Honor. My point was simply that under the framework that we set forth in Rahimi, the Supreme Court's most recent discussion of this topic, Rahimi made clear that Second Amendment challenges are subject to the same traditional facial standard, and that standard requires a showing that there is no set of circumstances in which the Act would be constitutional. And here, Plaintiff cannot show that there is no set of circumstances in which the Act would be constitutional. Again, it seems like you're putting the cart before the horse. Don't we first have to determine whether the conduct that's sought to be regulated falls within the textual language of the Second Amendment? Certainly, Your Honor. I'm happy to move on to that point. And our position here is consistent with the Fourth Circuit's recent en banc decision in Maryland, shall issue versus more. Okay, so let me ask this question. Is it the state's position that the conduct affected by the Floyd Act meets the first test of Bruin? Our position is that we rely on Bruin's discussion of shall issue licensing laws. And in that discussion... Let me back up. My question is, does the acquisition and possession of firearms fall within the text of the Second Amendment? Your Honor, I certainly agree that the possession of firearms would fall within the text of the Second Amendment, but that's not what the Floyd Act prohibits. What the Floyd Act prohibits is possession without a license. I'm still back on what the text of the Second Amendment covers. Does the text of the Second Amendment cover the acquisition and possession of firearms? The text of the Second Amendment, I don't mean to fight Your Honor's question, but at issue here is what the Floyd Act actually prohibits. And what the act prohibits is possession without a license. Counsel, before we can determine what it prohibits, we first have to determine whether there's even a constitutional question to begin with, don't we? And our argument would be that this case can be decided at the first step of the Bruin analysis, exactly how the Fourth Circuit decided. That's not my question. I realize you're doing your best to avoid answering the question, but it's a very simple question. Does the Second Amendment cover the acquisition and possession of firearms, period? Yes, certainly the possession of firearms is within the scope of the Second Amendment. It doesn't cover the acquisition of firearms? The acquisition of firearms is within the scope of the Second Amendment. Okay, so we got that part done. Once we determine that the conduct is covered within the text of the Second Amendment, we then have a presumption that any regulation or restriction by government is unconstitutional, correct? That is correct, but we do not concede that the possession of firearms... Hang on. I'm not asking what you concede. I'm not asking what you concede. I'm taking you through a process here that, actually, if you didn't fight it, it would go much faster. So once we've determined that it's covered within the text, next we then move on to there's a presumption that any restriction or regulation is unconstitutional. It then becomes the government's burden to establish both the historical tradition it becomes the government's burden to establish that we have a historical tradition consistent with that regulation, correct? Yes, I agree. That's a correct statement of the Bruin Test. Yes. What historical or founding-era firearm regulation that you've referenced so far in your briefs? That isn't otherwise unconstitutional by today's standards. Limits conduct in the way that the FOID Act does in that it prohibits everyone from acquiring or possessing a firearm until they prove they are qualified. So we identified two types of historical laws. The first were historical laws that preemptively disarmed categories of people based upon their perceived dangerousness at the time. This included laws that disarmed felons and the mentally ill, as well as laws that disarmed people who declined to swear loyalty oaths. Laws that are now unconstitutional, we surely can't rely on to find a certain regulation constitutional, can you? Well, I guess I would, I mean, I'd push back on that idea. First of all, I don't, I mean, laws that disarmed felons and the mentally ill are not unconstitutional. I guess I would push back on the idea that they are out because what Bruin teaches is that you look at the history at the time. Now to be sure today, governments would not disarm people based upon a decision, you know, not to swear a loyalty oath. But what that historical tradition stands for is that there was a tradition of governments disarming people based upon indicia of dangerousness. And while we might disagree about what constitutes dangerousness today, that doesn't change the historical tradition. Until they were required to make the oath, there was no prohibition against their possession of a firearm, correct? Until they require, it is, it is correct that they were disarmed based upon their decision not to take a loyalty oath, which was deemed to be an indicia of dangerousness. Because prior to that, it was, it was readily understood that everyone had the right to possess firearms, other than those people who, who have for a long time been historically prohibited, felons, people who are mentally ill. Well, and exactly. And the Floyd Act here is simply a mechanism for identifying those people that the government has deemed to be dangerous, and therefore at risk of misusing firearms. I mean, plaintiff's argument is essentially that the government cannot impose a burden, no matter how small, on a would-be firearms owner for the purposes of determining whether they are qualified to possess. And Bruin says that that is not the case. Bruin expressly approved shall-issue licensing laws. It also approved mechanisms like... Okay, you're trying to contend that the shall-issue licensing laws that are referred to in Bruin are the same as the shall-issue licensing law that Floyd is, correct? Our view is that there is no difference between, for purposes of Bruin's analysis, between a license to carry and a license to possess. I'm having a really hard time because you just, you won't ask, you won't answer the question. I understand you don't want to, but that's okay. It'll just go faster if you do. There are 43 statutes referenced in Bruin. Bruin expressly indicates how it is limiting its findings. Those 43 statutes referenced in footnote one that are then referenced in footnote nine are all public carry statutes, correct? They are, but Bruin also makes the point that there is no difference for purposes of the Second Amendment protection between possession in the home and public carry. Bruin makes the point... But what you want to do is you want to extend that language of the right to the power of the state to regulate, and those aren't a one-to-one correlation that you're allowed to make. Except that what Bruin said... You can't say that because a right is broadly protected that the government has a commensurate right to broadly regulate it, and that's your argument essentially. Our argument is that Bruin endorses shall issue licensing laws, and Bruin's reasoning... But it only referred to public carry. The subject of the case was public carry. Every statute referenced in footnote nine is public carry. The Illinois statute that they cite is the Illinois concealed carry statute. There's absolutely no reference to the Foyd Act, nor is there any reference in footnote nine or footnote one listing all the various statutes to any possession regulation. They are all related to public carry, and public carry has also historically been dealt with in a different fashion than the individual private possession of firearms, has it not? In some cases it has, but in some cases it hasn't. We identified a... I guess I'd like to make two points, if I may. First, with respect to Bruin, Bruin was a case about public carry, but Bruin's reasoning also hinged on the proposition that there is no difference for purposes of the Second Amendment between public carry and private possession. Bruin explained that the text of the Second Amendment protects the right to keep and bear arms, and it does not elevate the right to keep arms above the right to bear arms. That's the right that is being protected. It's not the power that the government has to regulate. You take it out of context. It has nothing to do with the ability or power of the government or the extent to which the government can regulate the right. It simply is referenced in terms of the broad nature of the right itself. Except though we know from Rahimi that the government can regulate to seek to keep firearms out of the hands of people who have been identified as dangerous and therefore likely to misuse them. And my point is simply that that proposition applies equally to public carry and to at-home possession. If somebody is at risk of misusing firearms, they're going to be at risk of misusing firearms simply by virtue of acquiring and possessing firearms. It isn't solely when they take those firearms into public. And then if I could just add, we know that Bruin didn't elevate the right to keep arms above the right to bear arms because that would be inconsistent with not only the text of the Second Amendment, it would also be inconsistent with the amendment's purpose, which was to allow people to protect themselves in cases of armed confrontation. And somebody is equally likely, you know, to need to defend themselves in public as in private. So for all these reasons... But in reality, it was simply the codification of a pre-existing right. And the pre-existing right was the right of all persons, other than those historically otherwise prohibited, to possess firearms. Yes, that's very true. But also in conjunction with the historical tradition, which Bruin's Note 9 talks about, and which the court elaborated on in Rahimi, of giving the government the ability to use a variety of mechanisms to confirm that the people who possess firearms are not likely to misuse them. And that is... No, Rahimi did not. No, I strongly disagree with that assertion. Rahimi did not reference the individual right to possess firearms, other than those circumstances in which that person had been brought to the attention of the authorities because of some either dangerous behavior or some circumstance that put them before the court. It didn't just blanketly agree that you can regulate the possession of firearms for all lawful citizens. In fact, it excluded lawful citizens and said you can regulate those circumstances where that person has, for whatever reason, done something or obtained a certain status that puts them in a position where we have to regulate them, either through their behavior, threats, conduct, whatever. But it said nothing about just the benign possession of firearms by law-abiding citizens being subject to that level of regulation. And if you say Rahimi does say that, I will be more than glad to listen to you cite the provision in Rahimi that says that. So, I certainly agree that unlike Bruin, which actually did address shall-issue licensing laws, Rahimi was not dealing... Only within the context of public carry. Can I jump in here? What was Bruin about? Wasn't it about public carry, counsel? Yes, of course. Bruin was about a may-issue public carry law. And in the course of discussing the constitutionality of that law and concluding that it was unconstitutional, Bruin set forth a standard for addressing shall-issue laws. And Bruin held that these laws are constitutional so long as they are not put towards abusive ends, such as through lengthy wait times and exorbitant fees, neither of which describes the Floyd Act. Now, as your honors have pointed out, at issue specifically in Bruin were public carry laws, but the court's reasoning applies equally to at-home possession because Bruin made very clear that the right to keep and bear arms, those rights are coextensive. The right to keep arms is... Counsel, the court made it clear in the... Both in its opinion and in the concurrences that they were only addressing shall-issue licensing regimes that relate to public carry, and that's all they were addressing. Isn't that correct? Understood. My point is simply that the reasoning of Bruin applies equally to licenses to possess and acquire firearms. That's exactly what the Fourth Circuit... I think it's Justice Gorsuch who said in his concurring opinion that we need to be careful to remember that the decisions by the Supreme Court are to be addressed and considered within the confines of the facts of the case in which they're entered. Correct? Yes, but one also has to look at the reasoning. And when the Fourth Circuit in Maryland... I'm just telling you what the judge who was involved in the case said. I understood. He said only consider it within the confines of the facts of this case. You're saying we've decided, you meaning we the state, has decided that we're going to use that reasoning to justify a different shall-issue regime that wasn't even discussed, addressed, or considered in Bruin. And both the Fourth Circuit and even more recently the Second Circuit in Antinick v. James, a decision that was reached after briefing was completed in this matter, looked at Bruin, looked at the shall-issue licensing laws at issue in those cases which involved, particularly in the Fourth Circuit case, a license to acquire firearms and held that Bruin's reasoning... Firearms in general or pistols? Yeah, I mean it applied to handguns. But I don't understand plaintiff to be arguing here that the Floyd Act is unconstitutional insofar as it applies to long guns. They're arguing... It applies to all guns. They contend that it's unconstitutional because it applies to all firearms. I don't understand them though to be arguing that it is unconstitutional only because it applies to all firearms and therefore would be constitutional if it were limited to handguns. No, but that's my point. The Maryland case is different from ours because it relates to a regulation that is addressing only a particular form of firearm. Floyd is not that kind of regulation. Floyd prohibits the acquisition and possession of any kind of firearm or any ammunition unless and until you engage in this registration requirement which has absolutely no historical tradition supporting it. So I guess I disagree that there's no historical tradition. In addition to the disarmament laws, the state also presented evidence of a variety of laws that required people to provide information. May I finish my answer, Your Honor? Please, please. Okay, thank you, Your Honor. The state also presented evidence of a variety of historical laws that required people to provide information to the government and also to pay a tax or other cost associated with firearms ownership. That includes the militia laws, it includes the loyalties, and it also includes laws requiring a certificate or payment of fee prior to possessing certain firearms. Are there how and why identical or even similar to the Floyd Act? Well, in terms of the how, the Supreme Court made clear in Rahimi that the state can use a variety of mechanisms. So, for example, in Rahimi, the court considered going armed laws and surety laws relevantly similar even though they were not identical to how the federal law challenged in that case works. All of which require some conduct by the person which then places them within the confines of a judicial determination that finds them to be dangerous or undesirable or whatever, and then restricts their ability to possess or carry, actually, carry a firearm. Many of those same historical regulations then indicated the only thing it prohibited was them carrying it in public. It didn't prohibit them actually possessing the firearm in their home as long as they didn't take it out. So that's not anywhere near consistent with what the prohibition of the Floyd Act is. So, I disagree insofar as the historical tradition the state identified included the disarmament laws, but it also included a variety of laws that required people to provide information to the government and to pay a fee or other cost associated with possessing firearms, and that is relevantly similar to the Floyd Act. Justice Kavanaugh, I know Ms. Notes is out of time. I didn't want to interrupt the exchange between Justice D'Armand and Ms. Notes, but could I ask a question? Please. All right. Ms. Notes, when I was asking Mr. Hildebrandt questions, I posed a hypothetical. Do you recall that? I think I took a few notes on it. Simply this. It was a licensing regime that required the applicant for the license to certify that he or she had not been convicted of a felony, and I believe Mr. Hildebrandt indicated that that would be presumptively unconstitutional, and then based on step two of the Bruin test, there would be no historical tradition that could be applied to find it constitutional. Can you tell me, just based on the Bruin test, and let's assume that footnote nine does not serve to take it out of the two-step process, is Mr. Hildebrandt correct? No, I disagree with that position, and even I'll put the language of Bruin to one side in footnote nine, as you've requested. The state's position would be that requiring someone to pay a modest fee and fill out a certification, which really actually isn't much more than the FOID Act does, would not implicate Second Amendment protected conduct because it would not rise to the level of an infringement, the very same reason the Fourth Circuit recently gave to uphold the Maryland shall issue law, and then even if the court got past the first step, at the second step, the state's position would be that such a law, because it seeks to identify people who are not qualified to possess firearms and therefore at risk of misusing them, would be consistent with the historical tradition. And on that, I would point the court to the reasoning of the separate concurrence in Maryland shall issue versus Moore. The judges who accepted that concurrence, they disagreed with the step one analysis, but they agreed that the Maryland law was constitutional under step two. Well, I'm trying to remember the dissent. You're talking about the dissent. I'm talking about Judge Rushing's concurrence. She concurred in the judgment that the Maryland law was constitutional, but she would have reached that decision based on a step two historical analysis rather than on the step one textual analysis followed by the majority opinion. Well, what was identified as the historical tradition? What was the analog? She relied in particular on surety laws and laws that had disarmed felons and the mentally ill. Okay. All right. Thank you. Ms. Nolts, you've been asked a lot of questions. I'll give you just a moment to briefly sum up your position. Thank you, your honor. You know, as I began to say, there are three reasons why this court should affirm the judgment of the circuit court. First of all, plaintiff brought a facial challenge, which requires them to show that the law is constitutional in all applications, which they can't do. Second, their challenge is foreclosed by Bruin, which explained that states may adopt shall issue licensing laws. Third, the court, or the state presented evidence of an historical tradition of laws relevantly similar to the Floyd Act, insofar as the state identified at an historical tradition of states imposing conditions on firearms possession, use and ownership in order to ensure that the people who possess firearms are not at risk of misusing them. And finally, I would point out that in the end, the plaintiff's argument reduces to a position that the government may not impose even a small burden on would be gun ownership as part of an effort to ensure that firearms are not misused by people likely are not possessed by people likely to misuse them. This is not supported by Bruin's express approval of shall issue licensing laws, which included an approval of background checks and a requirement of a firearms training course. And it's also not consistent with our nation's history, which shows that governments have adopted a variety of methods as they sought to ensure that firearms are safely possessed and used. So for these reasons, we respectfully request that the circuit court's judgment be affirmed. Thank you. Thank you. Thank you, Ms. Knotts. I appreciate you putting up with my questions. Thank you. So, in rebuttal, your honors, first, let's start with, I think we've talked about the surety laws some. Rahimi was clear, and this is at 144 S. C. T. 1901, that those laws applied only to safety of another. They did not apply to the public in general. The general public was not required to post a bond to possess firearms. In fact, the surety laws only applied to carrying those firearms out around in public. If someone thought that an individual was a threat, they had to go before a court, make a complaint, there'd be a finding, and the court could decide to require a bond. Illinois already has procedures like the, which we don't accept are constitutional, but they exist, such as the firearm restraining order law that would operate more similarly to that. Here, however, the law applies generally to all Illinois law-abiding citizens, and that's really the group that's impacted by the law because there are other prohibitions that already apply to prohibit felons from possessing firearms. The state continues to rely upon unconstitutional laws such as the loyalty oath laws that were no longer used by even 1791. Pennsylvania, for example, rescinded its law and expressly noted, as legislature noted in the statute books, that such laws were unnecessary in times of peace. As the Supreme Court in Rahimi noted, those laws are no foundation for upholding a firearm regulation today. Then additionally, the state tries to go back to the purpose of the Second Amendment. The Second Amendment supposes that individuals retain firearms in their homes that they can then bring to serve in the military, then to fight in the American Revolutionary War, but the Floyd Act operates to make it a crime for an individual to have a firearm in his home unless he first goes to the state and pays the state simply to exercise that fundamental constitutional right. As again we noted, an opening in the state, as it responded to, it would be facially unconstitutional for the state to require everyone to go and pay the state $10 and wait 30 days for someone to post an unpopular opinion online or to pray with one's family in the home. That would be facially unconstitutional. Under the Second Amendment, there's no historical basis for the idea that you can impose such a burden on law-abiding citizens who, again, under Burns and people of Yaglar, those are the groups, the law-abiding citizens, are those who are actually affected by the law. Further, the state mentions, I think they tried to say that we're only challenging for long arms. The Floyd Act applies to all firearms and it completely eliminates the ability to possess firearms. We don't accept the argument that shallow-shoe carry laws would be automatically constitutional. In fact, the Supreme Court noted in Bruin at 597 U.S. 50 that there is no historical basis for concluding that the pre-existing right enshrined in the Second Amendment permitted broad prohibitions on all forms of public carry. There certainly is no historical tradition for the idea that the state of Illinois can criminalize all forms of possessing a firearm, which here, given the other Illinois laws that exist, we're really talking about law-abiding citizens possessing firearms in the home. So if there are no... Sorry, Eric. I do have a question. Ms. Knott's pointed out that the requirements of Floyd are a minimal intrusion on someone's Second Amendment right. Does that matter? Any intrusion, first of all, I don't think it's minimal. You're making someone a criminal if you don't comply with the Floyd Act and making them go through the process that the Second Amendment does not allow to obtain that. The first step of Bruin doesn't weigh whether or not the burden is minimal or extreme. Here, as the state seems to concede, there is an infringement on the... With a plain text, the Second Amendment allows the right to keep and bear arms, which includes the right to possess firearms. Even if the state thinks that that infringement is somehow minimal, the idea that you're threatening all citizens that they have to pay money to the government or they become a criminal to exercise a criminal right, even if that were minimal, which we don't accept, that makes no difference in the Bruin Step 1. Even a minimal intrusion on the right to keep and bear arms satisfies Bruin Step 1, and then we have to go to Bruin Step 2 to see whether there's a historical basis for that. And here, there is no historical basis for it. The only... And just briefly, I'll wrap up, Your Honor. The only licensing law... The only licensing law they referenced in their briefing before the 20th century is that 1893 Florida licensing law, which was racially applied and only applied to repeating rifles. There simply is no historical tradition of such a broad-based licensing law applying to all forms of law-abiding citizens possessing firearms. And so, for those reasons, we urge the Court to reverse the decision of the Circuit Court below. Thank you, Your Honors. Any further questions for the panel? No. Thank you, Counsel. Thank you, Counsel. Thank you both. The Court will take this matter under advisement, and now is in recess.